STATE OF NEBRASKA, EX REL. CHARLES NICHOLS, v. ALBERT L. FIELD.

[FILED MARCH 13, 1889.]

Counties: DIVISION: ELECTION OF OFFICERS. Where a new county is created by the division of a larger one, the county commissioners elected at an election ordered by the governor in such new county for the election of officers, merely continue in office until the next general election for such officers, and until their successors are elected and qualified.

ORIGINAL application for mandamus.

*F. M. Devore,* and *W. M. Iodence,* for relator.

*James H. Danskin,* for respondent.

MAXWELL, J.

The relator alleges in his information "That at the general election of 1886, the county of Box Butte was erected out of territory belonging prior thereto to Dawes county; * * * that the governor issued his proclamation ordering an election of county officers for such new county upon

March 8, 1887, as provided by law, at which election all the
county officers of said new county of Box Butte were duly
elected.    That at said election, A. S. Reed, L. C. DeCon-
dress, and James Barry, were elected county commissioners
for such new county, and that said board of county com-
missioners, in the month of June, 1887, being regularly in
session, divided said county into three commissioners' dis-
tricts, as required by law, said districts being numbered re-
spectively one, two, and three; that at the general election
held in November, 1887, the said A. S. Reed and Sam'l W.
McClutchen were qualified electors of said county residing
in the third commissioner's district, and were candidates for
the office of county commissioner for said district, and that
the said McClutchen received a majority of all the votes
cast for said office at said election, and received from the
county clerk of said county a certificate of his election to
the office of county commissioner for said commissioner's
district, duly signed by said clerk and attested by the seal
of said county, and in due time executed his good and suffi-
cient official bond and took the oath of office required by
law, and presented said official bond to the county judge of
said county, and demanded said county judge to file and
approve said bond; but the county judge refused to approve
the official bond of said McClutchen, alleging as the rea-
son therefor that at the election ordered by the gover-
nor and held on the 8th of March, 1887, said A. S. Reed
had been elected commissioner for said third commissioner's
district for the term of three years, and that there was no
vacancy in said office; and by reason of the refusal of
said county judge to approve the official bond of said Mc-
Clutchen, the said A. S. Reed continued to hold said office;
that at the general election held, after due and legal notice
being given according to law, on the sixth day of Novem-
ber, 1888, this relator was a qualified elector of said county
and residing in the third commissioner's district of said
Box Butte county, and legally qualified to hold the office

of county commissioner therein, and at said general election held (after due and legal notice being given according to law) on the sixth day of November, 1888, was duly elected county commissioner for the third commissioner's district of said county, there being no opposing candidate to fill a vacancy then existing in the office of county commissioner of the third commissioner's district of said county, caused by the failure of Samuel W. McClutchen to qualify, on account of said county judge refusing to file and approve his official bond as aforesaid; that the relator, upon his being elected as aforesaid, received from the county clerk of said county a certificate of his election to the office of county commissioner for the third commissioner's district of Box Butte county, attested by the seal of said county and signed by said clerk, and in due time executed a good and sufficient official bond for the performance of the duties of the office of county commissioner for said county, and took the oath of office required by law, and presented said official bond to the respondent herein, who then was and still is the county judge of said county, and is required by virtue of his said office to file and approve the official bonds of county commissioners of said county, and demanded him, the said respondent, to approve and file his said official bond; but the said respondent, who is county judge as aforesaid, refused and still refuses to approve and file said official bond of this relator, and alleges that the said A. S. Reed was elected to the office of county commissioner for the term of three years at the election ordered by the governor and held on the eighth day of March, 1887, and that there is no vacancy in the third commissioner's district of Box Butte county, as the reason for such refusal."

He prays for a writ of mandamus to compel the defendant to approve such bond.

The answer of the respondent in effect admits the allegations of the petition to be true.

Sec. 7, chap. 10, Compiled Statutes, provides that: "The official bonds of the county commissioners or supervisors shall be approved by the county judge."

McClutchen seems to have abandoned all claim to the office in question. For the purposes of this action, we must assume that as between McClutchen and the relator, the latter has the superior right. This assumption, however, in case of a contest between them, would in no way affect their respective rights.

Sec. 11, art. I, chap. 18, Compiled Statutes, provides that: "If it shall appear that a majority of all the votes cast at such election in each of the counties interested, is in favor of the erection of such new county, the county clerk of each of said counties shall certify the same to the secretary of state, stating in such certificate the name, territorial contents, and boundaries, of such new county; whereupon the secretary of state shall notify the governor of the result of such election, whose duty it shall be to order an election of county officers for such new county, at such time as he shall designate, and he may, when necessary, fix the place of holding election, notice of which shall be given in such manner as the governor shall direct. At such election the qualified voters of said new county shall elect all county officers for said county, except as hereinafter excepted, who shall be commissioned and qualified in the same manner as such officers are in other counties in this state, and who shall continue in office *until the next general election for such officers*, and until their successors are elected and qualified, and who shall have all the jurisdiction and perform all the duties which are or may be conferred upon said officers in other counties of this state.

Section 12 is as follows: "All the justices of the peace, constables, and other township or precinct officers, who were previously elected and qualified in the county or counties from which such new county has been formed, whose term of office shall not have expired, at the time of said election,

and whose residence shall be embraced within the limits of said new county, shall continue in office until their terms of office shall expire, and until their successors shall be elected and qualified."

In counties duly organized the statute provides that "The board of county commissioners, in all counties having not more than 70,000 inhabitants, shall consist of three persons, and in counties having more than 70,000 inhabitants, shall consist of five persons. They shall have the qualifications of electors and shall be elected in their respective districts at the annual general election." (Sec. 53, ch. 18, Comp. Stat.)

"Sec. 54. Each county having not more than 70,000 inhabitants, shall be divided into three districts, numbered respectively one, two, and three; and in counties having more than 70,000 inhabitants, shall be divided into five districts, numbered respectively one, two, three, four, and five, and shall consist of two or more voting precincts, comprising compact and contiguous territory, and embracing, as near as may be possible, an equal division of the population of the county, and not subject to alteration oftener than once in three years, and one commissioner shall be elected from each of said districts by the qualified electors of the county, as hereinbefore provided. The district lines shall not be changed at any session of the board unless all of the commissioners are present at such session: *Provided*, That in counties of 70,000 inhabitants or more, it shall be the duty of the commissioners of such county, on or before September 1, 1887, to divide said county into five commissioners' districts, as provided for in this bill: *Provided further*, That the three commissioners of such county whose term of office will expire respectively on the first Thursday after the first Tuesday in January, in the year 1888; on the first Thursday after the first Tuesday in January, in the year 1889; and the first Thursday after the first Tuesday in January, in the year 1890; shall continue to represent the districts in which they shall reside after

the redistricting of such county, until the expiration of the terms for which they were elected: And *Provided further*, That at the general election in the year 1887, one commissioner shall be elected for each of the two remaining districts. Of the two persons elected in such districts, the person receiving the highest number of votes shall hold his office for the term of three years, and the person receiving the next highest number of votes shall hold his office for the term of two years, and each commissioner elected thereafter in pursuance of the provisions of this section, shall hold his office for three years and until his successor is elected and qualified.

"Sec. 55. At the first election held to choose the board of commissioners under this act in any county, the person having the highest number of votes shall continue in office for three years; the next highest two years; and the next highest one year; but if any two or more persons have the same number of votes, their term of office shall be determined by the board of canvassers, and each commissioner elected at the first general election, as herein provided, shall hold his office for three, two, and one years, as the case may be, and until his successor is elected and qualified, and each commissioner elected thereafter, in pursuance of the foregoing section, shall hold his office for three years, and until his successor is elected and qualified."

Two of these sections were amended in 1887, the amendments taking effect after March 8 of that year; but these amendments do not affect the case. It will be seen that it is the duty of the commissioners to divide the county into (in this case) three commissioners' districts, such districts to consist of two or more voting precincts "comprising compact and contiguous territory and embracing as near as may be possible an equal division of the population of the county."

Sec. 101, ch. 26, Compiled Statutes, declares that an office shall become vacant when the person holding the office

shall cease to be a resident of the district in which his duties are to be exercised.

In *State v. Skirving*, 19 Neb. 497, it was held that a county commissioner must continue to reside in the district in and for which he was elected, and that his removal from the district, even where he continues to reside in the same county, vacates the office. This, we think, is a correct statement of the law, and we adhere to it.

The commissioners elected at the first election are to divide the county into commissioners' districts, each district to comprise at least two voting precincts, of compact and contiguous territory, and embracing as near as possible one-third of the population of the county. At the first election all of the commissioners may be elected from one locality.

In many instances this would undoubtedly be the case. The law contemplates the creation of commissioners' districts and then the election of one commissioner from each district. This could not be accomplished in the temporary organization of a county, and it is evident from a comparison of the various provisions of the statute that commissioners elected at the first election for officers of a new county merely hold their offices until the next general election and until their successors. are elected and qualified. As between the relator and Mr. Reed, therefore, the relator is entitled to the office, and it is the duty of the respondent to approve his bond. Probably it will be unnecessary to issue a writ, as the respondent no doubt will approve the bond without further action. If not, a writ will issue as prayed.

JUDGMENT ACCORDINGLY.

THE other Judges concur.