Horton v. Howard.

find abundant evidence in the record to sustain the judgment of the lower court.

The judgment of the district court is

AFFIRMED.

LETTON, ROSE and SEDGWICK, JJ., not sitting.

WILLIAM H. HORTON, APPELLANT, V. WILLIAM B. HOWARD, AUDITOR, APPELLEE.

FILED JANUARY 2, 1915.   No. 18,615.

1. Counties: COMMISSIONERS: ORDERS: VALIDITY. Where one of the county commissioners has moved out of the commissioner district in which he resides into the district of another commissioner, and who continues to act as a member of the county board, the fact of such removal does not render an order of such county board a void order.

2. ————: BONDS: VALIDITY. Where a special election is held to issue bonds for the purpose of building and furnishing a courthouse and jail, and the same has been ordered to be held by the county board and the proper steps have been taken in the regular way to cause such election to be held, and the bonds are carried, there is no reason to attack their validity because one of the members of the board had moved into another commissioner district.

3. Evidence examined, and *held* to sustain the judgment of the district court.

APPEAL from the district court for Lancaster county: ALBERT J. CORNISH, JUDGE. *Affirmed.*

*Sterling F. Mutz* and *Harold M. Noble,* for appellant.

*Grant G. Martin, Attorney General,* and *George W Ayres, contra.*

HAMER, J.

William H. Horton, the plaintiff, commenced an action in the district court for Lancaster county, Nebraska,

against William B. Howard, the auditor of public accounts
of the state of Nebraska. The purpose of this action was
to enjoin the registration of certain bonds issued by the
county of Keya Paha. An answer was filed to the petition,
and there was a reply to the new matter in the answer.
On the trial the court found for the defendant and against
the plaintiff, and denied the prayer for an injunction and
dismissed the plaintiff's cause of action. The plaintiff ap-
peals from the judgment of the district court. No super-
sedeas bond was allowed.

The bonds sought to be enjoined were registered and
sold. The plaintiff alleges in his petition that he is a resi-
dent, a taxpayer, and a legally qualified elector of Keya
Paha county. The bonds issued were courthouse bonds
and jail bonds. There were 17 of them, each for $1,000.
The complaint is that the bonds were illegally issued and
void. It is claimed that the history of the bonds is false,
and that it does not contain a correct copy of the records
of Keya Paha county; that the records of that county do
not show that the resolution and notice set forth in an ex-
hibit attached thereto were signed by the chairman of the
board of county commissioners and by Willard Sprague,
a commissioner; that there is no showing that a vote was
had upon the resolution and notice and proposition to is-
sue the bonds; that the records of the county clerk do not
show action by the county board of county commissioners
as shown in the statement and history; that the resolution
calling the election to vote on the proposition to issue the
bonds was not adopted by a majority vote of the county
commissioners; that Herbert Cottrill voted for said resolu-
tion; that Albert Stoltenberg voted against said resolu-
tion; and William Sprague was disqualified because before
the meeting at which the resolution was offered he va-
cated his office by removing from the district; that only
three commissioners were elected, and that the vacancy
caused by the disqualification of the said William Sprague
was not filled by appointment or otherwise; that the prop-
osition submitted in paragraph two of the notice proposes
to issue bonds "for the purpose of purchasing material for

the building, erecting, constructing, finishing, furnishing, and completing a courthouse and jail building," whereas the official ballot provided for in the resolution and notice proposes to issue bonds "for building and finishing a courthouse building and jail building" and for building and furnishing a courthouse and jail building; that the propositions to build the courthouse building and a jail were submitted together and were not separate, and that the voters were compelled to vote for both or against both, and were thereby prevented from expressing their true will; that the notice without the resolution or other commissioners' proceedings attached was published only in the issues of May 1, May 8, and May 15, 1913, of the Springview Herald; that it was not published in the issues of said paper on the 22d of May, 1913; that the resolution and notice required the publication of both the resolution and notice, whereas the notice only was published in the issues of May 1, May 8, and May 15, 1913; that the bonds presented for registration indicate the purpose of the issue to be for "furnishing" a courthouse and jail in addition to the erection of said buildings; that the taxpayers of Keya Paha county are without remedy unless in a court of equity; that no remedy whatever can be had in a court of law; that no remedy can be filed in a court of law; that, if the defendant proceeds to register the bonds and in making a certificate of the legality of their bonds, the said bonds will be given official validation; that a purchaser of said bonds would be required to look only for the certificate of the said defendant; that, if the bonds were sold, the purchaser would be an innocent purchaser for value without notice of the defects and the illegality of the issue of said bonds; that, unless the defendant be restrained from registering said bonds and from issuing the certificate of legality of issue the said county commissioners of Keya Paha county will proceed to sell said bonds and will use the proceeds to erect a courthouse and jail and to levy taxes upon the petitioner and the other taxpayers of the county to pay the principal and interest of said bonds.

97Neb.37

There was a prayer for a temporary injunction restraining the defendant from registering said bonds and from making the certificate showing that the bonds had been voted and issued in accordance with law, also from signing the approval of the said defendant upon said bonds; that on the final hearing the injunction should be made perpetual and said bonds declared illegal and void.

The history recited that at an adjourned session of the regular January meeting of the board of county commissioners of Keya Paha county, Nebraska, held in the office of the county clerk in said county on the 14th day of April, 1913, all of the members of said board of county commissioners were present, and that there came up for consideration the matter of the advisability of submitting to the legal voters of said county at a special election to be held on the 24th day of May, 1913, a proposition to issue the bonds of said county for the purpose of erecting a courthouse and jail; that it was moved by Herbert Cottrill and seconded by William Sprague that an order and resolution should be adopted making it the duty of the county commissioners to provide a safe and suitable courthouse and jail and every necessary of the buildings, and to provide suitable offices for the county officers and for the courtrooms and offices for the accommodation of the several courts of record, also fire-proof safes and vaults for the safe-keeping of county records. This resolution also recited that the county courthouse was in an unsafe condition, inadequate for the accommodation of the several county offices and courts of record, and that there was no safe in which to keep the county records; also, that the vaults wherein the records of said county were stored were unsafe, and that said records were likely to be destroyed. And it was resolved by the board of commissioners of Keya Paha county at an adjourned meeting of the regular January session, 1913, that a special election be called to be held in said county on Saturday, the 24th day of May, 1913, to submit to the legal voters of said county a certain proposition, to wit: "Shall the board of county commissioners of Keya Paha county, Nebraska, for and on be-

half of said county issue the bonds of said county in the sum of seventeen thousand ($17,000) dollars of the denomination of one thousand ($1,000) dollars each for the purpose of purchasing material for the building, erecting, constructing, finishing, furnishing, and completing a courthouse and jail building for said county, in the town of Springview, the county seat of said county, on the courthouse block in the said town of Springview, known and described as block one (1) of the village of Springview, Keya Paha county, Nebraska, and all the costs thereof not to exceed the sum of seventeen thousand ($17,000) dollars, the entire amount of said bonds to be payable to bearer at the Nebraska fiscal agency in New York City at the expiration of twenty years from the date thereon, interest to be made payable on the first day of December, 1913, and on the first day of June and December in each year thereafter, said bonds to draw interest at the rate of five and one-half per cent. per annum from date of issue of same, payable semiannually?"

The form of the ballot was also set out and the places where the election should be held, naming ten certain precincts. There was also in the said history the affidavit of the publisher issuing the weekly newspaper in which the said notice had been published. There was also the certificate of the county clerk of the said county of Keya Paha showing that a proper canvass of the returns upon said proposition had been made as provided by law, and that the said canvassing board found that 421 votes were cast authorizing the county board of county commissioners of Keya Paha county to issue said bonds. On the 29th day of May, 1913, it was found that there was a proposition to issue the bonds of said county in the sum of $17,000 to build and finish the said courthouse and jail building, and that due and legal notice of the submission of said proposition was given by publication of the said notice in the Springview Herald for four consecutive weeks beginning in the issue of April 24, 1913, and running through the issues of May 1, 1913, May 8, 1913, May 15, 1913, of said paper. The said proceedings are set out at great

length, and we cannot set them out in full without greatly and unnecessarily extending this opinion.

The defendant, William B. Howard, answered admitting that 17 bonds of the county of Keya Paha, Nebraska, of the denomination of $1,000 each, accompanied by a history thereof, had been received from the county clerk of Keya Paha county with the request that said bonds be registered according to law and the certificate of the defendant be attached to said bonds showing that they had been voted in accordance with the law and that they were legally issued. There was also the statement of the said defendant that he was about to register said bonds and make a certificate that the same had been issued and voted according to law, and that he was ready to do so unless restrained by the order of the court. It was also alleged that Herbert Cottrill and William Sprague voted for the resolution submitting the question of the issue of said bonds, and that Albert Stoltenberg voted against said resolution; that said William Sprague, prior to the time he voted for said resolution, had removed from the commissioner district in which he resided at the time of his election into another commissioner district; but it was further alleged that the term for which the said William Sprague was elected had not expired, and that he had not resigned therefrom, but continued to perform the duties of the office of county commissioner in said county, and was recognized as a member of said board of county commissioners by the other members thereof and by the people of said county generally. Also, that the resolution submitted the proposition to be voted upon, "for the purpose of purchasing material for the building, erecting, constructing, finishing, furnishing, and completing a courthouse and jail building," etc. Also, the defendant answered admitting that the first publication of the notice was on the 24th day of April, 1913, and that the same was thereafter published May 1, May 8, and May 15, 1913, and that the publication was in a legal newspaper; that the bonds presented indicated the purpose of the issue to be to raise money for furnishing a court-

house and jail as well as to raise money for the erection of such buildings.

There was a reply to the answer denying the allegations of new matter. Upon the trial the district court found for the defendant and against the plaintiff, and dismissed the plaintiff's petition. Plaintiff's motion for a new trial was overruled.

The record fails to show that any supersedeas bond was filed. The bonds have been registered and sold and delivered. We have read the bill of exceptions. It shows that there was no proceeding to oust Commissioner Sprague, and that there was no appointment made to fill the alleged vacancy caused by the removal of Sprague from one commissioner district to another. It was also stipulated that the exhibit attached to the plaintiff's petition contained a true and correct copy of the history of the bonds as submitted to the auditor when application was made for their registration; also, that the bonds recited that they were issued for the erection and furnishing of a courthouse and jail; also, that for the last 15 years it has been the custom of the newspapers of Springview to publish the proceedings of the county commissioners from time to time, giving their action upon the various subject-matters coming before them and disposed of by them.

F. J. Rhodes testified on behalf of the relator that he had made an investigation of the records of Keya Paha county in relation to the passage of the resolution and notice calling an election—the one in controversy; that he did it previous to the commencement of the suit; that he investigated the records of the county clerk and of the board of county commissioners of Keya Paha county, and that he did not find the words following the resolution, "On motion the above resolution was adopted as read this 14th day of April, A. D. 1913, at Springview, Nebraska. John Scheie, County Clerk of Keya Paha county." On cross-examination he testified that he did not know whether the resolution passed or not.

There is also a stipulation in the record showing that the county attorney of Keya Paha county wrote to the

attorney general of the state of Nebraska, and received
from him a letter to the effect that, "if the boundaries of
the district were changed arbitrarily by the board, so that
a commissioner was changed from the district from which
he was elected, our court has held that this would not de-
prive him of holding the office for the full term. But,
where he does an act himself that places him outside the
boundaries of the district, evidently it would be different.
The safer course to pursue is for the commissioner to be a
resident of the district he represents." It does not appear
that Sprague was advised that he should give up the office
of county commissioner, and he appears to have retained
the office and to have continued to serve as such county
commissioner. There was a unanimous vote of the county
board that the bonds should be issued. There was also
a vote to the effect that the office of William Sprague as
county commissioner had not expired.

The notice published states the amount of the bonds
to be voted, the interest they are to draw, the time for
which the bonds are to run, the date of the election, and
the polling places. This is sufficient. Rev. St. 1913, sec.
956.

In *Linn v. City of Omaha,* 76 Neb. 552, there was to be a
bond issue of $60,000 to pay for the construction of fire-
engine houses for the use of the fire department of
the city of Omaha. There were other particulars stated in
the notice. The ballot label upon the voting machine was:
"Shall the city issue $60,000 fire-engine house bonds to run
20 years at 4%?" It was said that the ballot label was
not intended to furnish information to the voter in detail
as to the object of the election; that the proclamation
was notice of the election and fully informed the electors
of the object of the election; that the object of the in-
scription was to instruct the voter as to how he might vote
intelligently on the question of which the proclamation
gave him notice.

In *Calahan v. Handsaker,* 133 Ia. 622, there was a reso-
lution by the directors of the school township to submit
the question at an annual meeting where bonds in an

amount not exceeding $4,000 should be issued to erect the schoolhouse. The notice of the meeting recited that the question was whether the township should issue bonds not to exceed $4,000 for the erection of a schoolhouse, and stated the manner of voting on the proposition. The ballot to be used followed the notice, except that it omitted the limit of the amount of bonds that might be issued. It was held that the ballot was a sufficient compliance with the law which provided for submitting the question to be voted on.

In *Wightman v. Village of Tecumseh,* 157 Mich. 326, the words, "For sewer purposes," were omitted from the ballot as it was printed. In the form of the ballot it was provided that the same should contain the purpose for which the bonds were authorized; but the court held that an omission from the statement upon the ballot of the purpose for which the bonds were to be issued did not invalidate the election, as the resolution and the published notice contained a full statement of the purpose.

We are unable to discover any error which seems to us to be prejudicial. The evidence appears to fully sustain the judgment of the district court, and it is

AFFIRMED.

ROSE, J., not sitting.

FAWCETT, J.

For the reasons stated in the foregoing opinion, supplemented by the reasons assigned in the concurring opinion of SEDGWICK, J., I concur.

LETTON, J., concurs as stated by Fawcett, J.

SEDGWICK, J., concurring.

I think that the conclusion reached in the opinion of Judge Hamer is right. The relator in his brief urges six different reasons for reversing the judgment of the district court.

1. The resolution calling the election for the issuance of bonds was adopted by the votes of two of the members of

Horton v. Howard.

the county board, one member voting against it. Mr. Sprague, one of the members voting for it, had removed from the precinct from which he was elected to another precinct in the county, and the relator contends that he was disqualified to vote, and that therefore the resolution was not adopted. The relator cites *State v. Skirving*, 19 Neb. 497, and *State v. Field*, 26 Neb. 393. In the former case it was directly held that a county commissioner must reside in the precinct from which he was elected. The commissioner had removed to another precinct, and at the next general election it was insisted by all parties that a successor should be elected. The candidates were regularly nominated, and the relator in that case was elected. He brought an action in *quo warranto* to test his right to the office. The court held that he was entitled to the office. This holding was approved without comment in the latter case. In the case at bar no one contested Mr. Sprague's right to the office, and he continued to act in that capacity without objection. His actions therefore were entitled to the force and effect of the act of an officer *de facto*.

2. The second point urged is that the notice of the election was defective. In this contention the relator disregards the first publication, in which the whole proceedings of the county board were published, including the matters which he insists were not properly published. When we remember that the respondent, as auditor of state, was not restrained from proceeding with the registering of the bonds, and that the bonds have accordingly been duly registered and sold and the proceeds received by the county, and that this relator has no special interest in the matter, it must be held that the first publication was not invalid because it included the whole minutes of the county board.

3. It is objected that there were two propositions submitted, and that under the law they should have been submitted separately. The purpose of the bonds was stated, "for the purpose of erecting a courthouse and jail building in said county," and in another place, "for building and furnishing a courthouse building and jail building." It

Horton v. Howard.

seems to be contended that this contemplated two buildings; but there is no allegation that it was so considered by the board, or that any one was misled in that respect. The building contemplated was for a courthouse and jail, and I think that this objection was without merit.

4. It is also contended that the county commissioners were without authority to issue bonds for furnishing the building. The notice recited that it was "for the purpose of purchasing material for the building, erecting, constructing, finishing, furnishing, and completing a courthouse and jail building for said county." In *Linn v. City of Omaha*, 76 Neb. 552, it was held that the authority to issue bonds for the construction or purchase of needful buildings for the use of the city included the power to purchase the site for such buildings; and in *Champion Iron Co. v. City of South Omaha*, 93 Neb. 56, it was held that the installation of cells in the city hall to be used in connection with the police court was authorized by a vote to purchase a site and erect a city hall thereon. A courthouse and jail would be useless without proper furnishing, and such furnishing must be considered as a part of the building itself, within the contemplation of the statute.

5. Various discrepancies in the language used for stating the purpose of the issue of the bonds are discussed in the brief; but in view of the facts before stated, that the relator has no special interest in the matter, and that the proceeds of the bonds have already been appropriated, I would not consider it necessary to discuss these verbal discrepancies.

6. Lastly, it is contended that the trial court should have required the auditor to examine the authenticity of the history of the bonds. The law makes it his duty to examine the history of the bonds, and the court properly presumed that the auditor had done so.

For the foregoing reasons, I think that the conclusion affirming the judgment of the district court is correct.